**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SAHIBPREET SINGH,

        Petitioner,

    v.                                                            Case No. 2:26-cv-00427-KWR-KK

KRISTI NOEM, *Secretary of the Department of Homeland Security*,
DORA CASTRO, *Warden of the Otero County Processing Center*, *and*
MARISA FLORES, *ICE Field Office Director*, *El Paso Field Office*,

        Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Petitioner Sahibpreet Singh's Petition for Writ of Habeas Corpus (Doc. 1). This Petition turns on whether Petitioner's due process rights were violated when he was re-detained after being released under 8 U.S.C. § 1226(a). Because Petitioner's conditional parole has not been properly terminated and he remains detained, Petitioner is detained in violation of due process. Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is well-taken, and therefore, is **GRANTED**.

### BACKGROUND

Petitioner entered the United States on or about October 2, 2023. Doc. 1 ¶ 20 (Pet.). He was arrested shortly thereafter and released on his own recognizance on October 6, 2023. *Id.* ¶ 6; Doc. 1-1 (Order of Release on Recognizance). Petitioner was placed in removal proceedings. Doc. 1 ¶ 2. He has complied with the conditions of his release, including appearing at check-ins and hearings. *Id.* ¶ 1. He has no criminal record. *Id.*

On or about December 2, 2025, Petitioner was detained at his scheduled check-in. *Id.* ¶ 23. As of the filing of this Petition, he is detained at the Otero County Processing Center in Chaparral, New Mexico. *Id.* Petitioner received a bond hearing on March 6, 2026. Doc. 7-1 at 1 (Order of the Immigration Judge). The immigration judge, noting that Petitioner lacks community ties and is a "commercial truck driver and can't read English well," denied release and found Petitioner to be a flight risk and danger to the community. *Id.*

## LEGAL STANDARDS

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A challenge to immigration detention is "properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## DISCUSSION

Respondents argue that 8 U.S.C. § 1226(e) does not allow the Court to review or "set aside any action or decision by the Attorney General regarding the detention of any alien or the revocation or denial of bond or parole." However, Petitioner does not ask the Court to review his bond determination. The crux of this Petition is whether Petitioner's procedural due process rights were violated. The Court briefly addresses the jurisdictional inquiry before turning to the merits.

I.   **The Court has jurisdiction to consider the claim.**

Respondents hinge their entire argument on the jurisdiction-stripping provision of 8 U.S.C. § 1226(e) and contend that the Court cannot review the immigration judge's bond determination.

Although the statement is correct, that is not the proper inquiry here. Petitioner argues that procedural due process requires, after having already been released under 8 U.S.C. § 1226(a), a pre-deprivation hearing before being detained again.

>The jurisdiction-stripping provision provides that:

>The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). Section 1226(e) has "no explicit provision barring habeas review." *Demore v. Kim*, 538 U.S. 510, 511 (2003); *see also Herandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (finding that § 1226(e) does not bar "habeas jurisdiction over constitutional claims or questions of law"); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("Whether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review." (quoting *Zadvydas*, 533 U.S. at 688)). Although § 1226(e) deprives the Court of reviewing discretionary decisions, it is not sufficiently specific to deprive the Court of habeas jurisdiction. *Sierra Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217–18 (10th Cir. 2001) (holding that § 1226(e) does not speak "with sufficient clarity to bar jurisdiction pursuant to the general habeas statute" (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)).

Here, Petitioner does not seek review of the decision denying bond or release. Petitioner argues he is being detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A). Doc. 1 ¶¶ 34–64. Petitioner's challenge that he is detained under § 1226(a), rather than § 1225(b)(2)(A), is a legal question that does not implicate the Attorney General's discretion. *See Demore*, 538 U.S. at 516–17 (holding that § 1226(e) did not deprive courts of habeas jurisdiction when petitioner challenged the statutory framework that permitted his detention without bail).

Petitioner's second argument is that being re-detained without a pre-deprivation hearing violates his procedural due process rights. Doc. 1 ¶¶ 69–88. His due process argument challenges the process that occurred *before* his bond hearing took place. The Court retains habeas jurisdiction, and Petitioner brings statutory and constitutional challenges that do not encroach upon the Attorney General's discretionary authority. Accordingly, the Court has jurisdiction to consider Petitioner's claims.

II.    **Whether Petitioner's detention is governed by § 1225(b)(2)(A) or § 1226(a).**

This Petition first addresses whether § 1225(b)(2) or § 1226(a) governs Petitioner's detention. Respondents ask this Court to not consider Petitioner's INA claim in light § 1226(e). Doc. 7 at 3 n.4. Petitioner posits that his detention is governed under § 1226(a), not § 1225(b)(2)(A). Doc. 1 ¶¶ 33–64. After a plain reading of § 1225(b)(2)(A) and having found that § 1226(e) does not bar this inquiry, the Court agrees with Petitioner.

When interpreting a statute, courts first "examine the statute's plain text" and "[a]bsent ambiguity, [the] analysis ends there." *United States v. Koerber*, 10 F.4th 1083, 1112 (10th Cir. 2021). Should the analysis continue, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the 'broader context of the statute as a whole' when ascertaining the meaning of a particular provision." (citation omitted)). Courts also consider traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, only if the statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) ("[I]t is a

longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute.").

Under the Immigrant and Nationality Act ("INA"), two statutes generally govern a noncitizen's detention pending a final order of removal: §§ 1225 and 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225, which mandates detention and does not afford a bond hearing, applies when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Section 1226 provides that a noncitizen "may be arrested and detained" pending a removal decision. § 1226(a). Under § 1226(a), the Attorney General may detain the arrested noncitizen, release them on bond, or release them on conditional parole. Section 1226(c) mandates detention for a noncitizen that is (1) present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain criminal acts. 8 U.S.C. § 1226(c)(1)(E).

In sum, immigration law authorizes the detention of "certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting *Jennings*, 583 U.S. at 289). For Petitioner's detention to be governed by § 1225(b)(2)(A), the Court must find that Petitioner is (1) an "applicant for admission," (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A).

Petitioner is likely an "applicant for admission" as defined by statute. "[A]pplicant for admission" is defined as "an alien present in the United States who has not been admitted or who

arrives in the United States." 8 U.S.C. § 1225(a)(1) "Admission" and "admitted" mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Here, Petitioner is present in the United States, and he has not been inspected or admitted. Doc. 1 ¶ 1. Thus, per the statutory definition, Petitioner may be deemed an "applicant for admission" thereby satisfying the first criteria of § 1225(b)(2)(A).

The crux of the § 1225(b)(2)(A) inquiry is whether Petitioner can be deemed "seeking admission." As explained below, after a plain reading of the statute, the Court finds that Petitioner, who has been living in the United States for years, is not "seeking admission."

The Court begins with the plain text of the phrase "seeking admission." *See Koerber*, 10 F.4th at 1112. Since "seeking" is statutorily undefined, the Court will first consider the word "admission." "Admission" is statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). "Entry" is statutorily undefined. Respondents do not assert that the word "entry" has any unusual, technical meaning, and therefore, the Court will apply its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017). "Entry" ordinarily means "[t]he action or an act of entering a place, area, building, etc." *Entry*, Oxford English Dictionary, https://www.oed.com/dictionary/entry_n?tab=meaning_and_use#5515547 (last visited Mar. 18, 2026); *see also Entry*, *Black's Law Dictionary* (12th ed. 2024) ("*Immigration*. Any entrance of an alien into the United States, whether voluntary or involuntary."). Thus, the word "admission," as used in § 1225(b)(2)(A), refers to a noncitizen's lawful act of physically entering the United States after inspection and authorization by an immigration officer.

Turning to the statutorily undefined word "seeking," in this context, it ordinarily means trying to obtain something or trying to bring about or effect. *Seek*, Oxford English Dictionary,

https://www.oed.com/dictionary/seek_v#23724107 (last visited Mar. 18, 2026). In choosing the present participle "seeking," courts should give effect to Congress's verb choice and find that "seeking" signals present and continuous action. *Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."); *see also Present Participle*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited Mar. 18, 2026). Therefore, the Court finds that a plain reading of the phrase "seeking admission" demonstrates that § 1225(b)(2)(A) applies to noncitizens who are presently trying to lawfully and physically enter the United States.[1] Section 1225(b)(2)(A) does not apply to noncitizens who, like Petitioner, have lived in the United States for an extended duration and are not presently seeking lawful entry into the United States.

8 U.S.C. § 1225(a)(3) indicates that Petitioner is not "seeking admission." Section 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* The word "or" is "almost always disjunctive, that is, the words it connects are 'to be given separate meanings.'" *United States v. Woods*, 571 U.S. 31, 45 (2013) (citation omitted). Additionally, the phrase "or otherwise" signals that the phrase "applicants for admission" does not have the same meaning as "seeking admission." Additionally, the use of the phrase "or otherwise"

---

[1] The Court understands the ordinary meaning of the word "entry," as used in the statute, to mean the physical act of going into the country. The meaning aligns with how "entry" is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long referred to physically going into the country, regardless of whether the entrant is legally in the United States. *See, e.g., Leng May Ma v. Barber*, 357 U.S. 185, 187 (1058) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

signals that the term "applicants for admission" has a different meaning than the term "seeking admission."       *Or*       *Otherwise*,       Oxford       English       Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058328 (last visited Mar. 18, 2026) ("In another way or ways; in a different manner; by other means; in other words; differently.").[2] Thus, a plain reading of § 1225(a)(3) demonstrates that Petitioner can be deemed an "applicant for admission" without necessarily being deemed "seeking admission."

Further, Respondents interpretation renders superfluous recent amendments to 8 U.S.C. § 1226(c). Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. It requires detention for a noncitizen who is (1) inadmissible as an alien present in the United States without being admitted or paroled, and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits" to committing certain crimes. Respondents' interpretation of § 1225(b)(2)(A) would require the detention of every noncitizen who is present in the country without being admitted or paroled. Such an interpretation would render the recent § 1226(c)(1)(E) amendment superfluous in that detention would be required regardless of the noncitizen's criminal involvement.

The Supreme Court, in dicta, has recognized that § 1225(b) generally applies "to aliens seeking entry into the United States" and that § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. The *Jennings* Court further noted that § 1226(a)

---

[2] The grammatical placement of "or otherwise" also indicates that "seeking admission" must mean something different than "applicants for admission." *Or Otherwise*, Oxford English Dictionary, https://www.oed.com/dictionary/otherwise_n?tab=meaning_and_use#33058910 (last visited Mar. 18, 2026) ("[F]ollowing a noun, adjective, adverb, or verb, to signify a corresponding word, thing, idea, etc., of opposite or alternative meaning" (citation modified)). Here, the phrase "or otherwise" follows a noun, "applicants for admission," signifying that the phrase "seeking admission" is a "corresponding word, thing, idea, etc., of opposite or alternative meaning." *Id.*; *see also* § 1225(a)(3).

creates a default rule for noncitizens present in the United States "by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also permitting "the Attorney General to release those aliens on bond." *Id.* at 303. Thus, the Supreme Court's construction of §§ 1225(b) and 1226(a) align with this Court's reading of the phrases "applicant for admission" and "seeking admission."

The Court's statutory reading of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that a person who has been present in the United States for an extended period of time is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g., Castañon-Nava*, 161 F.4th at 1061; *see also Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States." (citation modified)); *Buenrostro-Mendez v. Pamela Bondi*, 166 F.4th 494, 510 (5th Cir. 2026) (Douglas, J., dissenting).

Applying this statutory reading to the present facts, the Court finds that Petitioner is not "seeking admission" under § 1225(b)(2)(A).

III.    <u>**Whether a pre-deprivation hearing is necessary for due process after a noncitizen is released on their own recognizance under § 1226(a).**</u>

Petitioner argues that failure to receive a pre-deprivation hearing prior to being detained again violates his procedural due process rights.[3] Doc. 1 ¶¶ 78–88. Respondents contend that the

---

[3] Petitioner argues that Respondents "totally ignore [his] arguments regarding the improper revocation of his order of release on recognizance." Doc. 9 at 2. Petitioner argues that this failure to respond warrants a finding that Respondents waived their chance to respond to this argument, and the Petition should be granted on the that ground. *Id.* at 2–5. Not only did Respondents acknowledge Petitioner's due process and INA arguments, *see* Doc. 7 at 3 n.4, but Petitioner bears the burden of proof to demonstrate that he is entitled to a relief or a remedy, *see Espinoza v. Sabol*,

Court should not address this issue because the Court cannot review or assess an immigration judge's order under 8 U.S.C. § 1226(e). Doc. 7 at 2. Because the due process inquiry concerns conduct completely separate from the immigration judge's decision, the Court will consider the due process argument.

The Due Process Clause prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law." U.S. Const. amend. V. In the immigration context, "the nature of that protection may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694. Noncitizens are entitled to due process "in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). However, such protections need not equate to those afforded to citizens. *Demore*, 538 U.S. at 522 ("[T]his Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens."). Because noncitizens "do not have a constitutional right to enter or remain in the United States, the only protections afforded are the minimal procedural due process rights for an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009).

In considering a due process claim, the Court considers whether there exists a protected liberty interest and whether the procedures provided afford the individual adequate process.

---

558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was not 'in custody in violation of the Constitution or laws or treaties of the United States'" under § 2241); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context of a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner). Accordingly, the Court declines to grant Petitioner's habeas petition on waiver grounds.

*Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2001); *see also Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1244 (10th Cir. 2012) ("To claim a violation of his right to procedural due process, Petitioner 'must have a liberty or property interest in the outcome of the proceedings.'" (quoting *Arambula-Medina*, 572 F.3d at 828)).

### A. Petitioner's liberty interest.

Petitioner contends he has a liberty interest in his continued release on his own recognizance. Doc. 1 ¶ 71. Since Respondents rested their entire response on their jurisdictional argument, they put forth no argument that Petitioner does not have a liberty interest in his continued release. The Court finds that Petitioner's liberty interest, at the very least, entitles him to the procedures authorized by Congress.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). A noncitizen that is considered to have not entered the country is only entitled to "the procedure authorized by Congress." *Sierra*, 258 F.3d at 1218 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). However, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 694.

### 1. Constitutional precedent.

Petitioner posits that he has a due process right in a hearing prior to being detained again because he has a protected liberty interest in his conditional parole. Doc. 1 ¶¶ 78–88. Respondents offer no argument beyond that of the Court lacks jurisdiction. Doc. 7 at 2.

In finding that a noncitizen's conditional release rises to the level of a protected liberty interest, several courts have turned to the line of Supreme Court cases finding a protected liberty interest in parole, probation, and pre-parole. *See, e.g.*, *Singh v. Carnes*, No. 1:26-cv-00235-DHU-GJF, 2026 WL 599138, at *3 (D.N.M. Mar. 3, 2026); *J.A.E.M. v. Wofford*, __F. Supp. 3d__, No. 1:25-cv-01380-KES-HBK, 2025 WL 3013377, at *3 (E.D. Cal. Oct. 27, 2025). To determine whether a conditional release creates a protected liberty interest, at least one circuit has "resolved the issue 'by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*.'" *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (citation omitted).

In *Morrissey v. Brewer*, the Supreme Court found that paroled individuals enjoy several "of the core values of unqualified liberty" and build their lives upon "at least an implicit promise that parole will be revoked only if [they] fail[] to live up to the parole conditions." 408 U.S. 471, 482 (1972). Given the "grievous loss" caused by revocation of parole, the Court found that those released on criminal parole were entitled to due process before having their parole revoked. *Id.* The Court expanded this principle to criminal probation, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), and even a pre-parole program, *Young v. Harper*, 520 U.S. 143, 145 (1997).

A noncitizen's civil, conditional release and a citizen's criminal parole are parallel in several core constitutional respects. Like release on parole, or any release from detention, Petitioner's release "enables him to do a wide range of things" including work, "be with family and friends," and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Since his release on October 6, 2023, Petitioner has not been convicted of any crimes and "has built a life for himself." Doc. 1 ¶ 1. Although Petitioner was subject to "requirements of his release, including appearing at immigration check-ins and hearings," *id.*, a criminal parolee is also

subjected "to many restrictions" not applicable to those not convicted of a crime. *Morrissey*, 408 U.S. at 482. Respondents make no argument as to why *Morrissey* and its progeny should not apply in the immigration context. The distinction between Petitioner's status as a noncitizen and the citizen in *Morrissey* is not necessarily dispositive. *See Zadvydas*, 533 U.S. at 693 (finding that the Due Process Clause applies to all people within the United States regardless of their status (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982)).

However, *Morrissey* does not necessarily stand for the proposition that a noncitizen, previously released pursuant to § 1226(a), is entitled to a hearing prior to being detained again. Although *Morrissey* found that a criminal parolee was entitled due process during the revocation of parole, the process due was only "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." 408 U.S. at 484–85. The Court found that "after the arrest," due process required that an individual, not directly involved in the case, determine that reasonable ground existed for revoking parole. *Id.* The determination by this individual is meant to determine if there "is probable cause or reasonable ground to believe that the arrested parolee" violated their conditions of parole and whether it is justified to "hold the parolee for the final decision of the parole board on revocation." *Id.* at 487. This language indicates that the arrest, or Petitioner's re-detention, may occur prior to any hearing. The phrases "at or reasonable near" and "as promptly convenient after arrest," do not suggest that a hearing must be conducted before Petitioner is detained again. *Morrissey* appears to characterize the deprivation as "the final decision" revoking parole, not the arrest and detention prior to any final decision revoking release as Petitioner suggests. Without any input from Respondents, it remains unclear whether Petitioner's arrest operates as the "final decision" revoking his conditional release or if his

13

subsequent bond hearing operates as the "final decision" revoking the release. Regardless, the Court finds that Petitioner was not afforded the statutory minimum due process authorized by Congress.

### 2. The statutory minimum has not been met.

Although Petitioner asks this Court to recognize a protected liberty interest in receiving a hearing prior to being detained again under § 1226(a), the Court finds that, in Petitioner's case, even the minimal procedural due process rights he is afforded by statute have been violated. The Court will not recognize a new liberty interest under the Constitution if it does not need to. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (finding that a "fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them").

Under even the minimal procedural due process rights afforded to noncitizens, Petitioner is entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218. 8 U.S.C. § 1226(b) governs the revocation of bond or parole and provides that the "Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." A relevant regulation provides:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

Beginning with the plain text, *see Koerber*, 10 F.4th at 1112, the Attorney General is afforded immense discretion to revoke parole "at any time," § 1226(b). Further, the regulations

14

specifically provide for Petitioner's exact situation. Petitioner, a noncitizen, was arrested and taken into custody before being released. Doc. 1 ¶¶ 1, 21. Under the regulations, "such release may be revoked at any time in the discretion of [a listed official], in which event the alien may be taken into physical custody and detained." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). There is nothing in the text of the statute or regulation that suggests a hearing is required before detaining a noncitizen released under § 1226(a). Although the text does not explicitly grant Petitioner the liberty interest he seeks, Petitioner is still entitled to the "procedures authorized by Congress." *Sierra*, 258 F.3d at 1218; *see also Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) ("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy.").

Petitioner was granted release on his own recognizance by a Form I-220A. Doc. 1-1 at 1. The Form specified his release was in "accordance with section 236" of the INA and that he was "released on [his] own recognizance provided [he] comply with the [the conditions of release]." *Id.* Release on one's own recognizance is a form of conditional parole under § 1226(a)(2)(B). *See In re Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("[They were] released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)."); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the . . . phrase 'release on recognizance' [is] another name for 'conditional parole' under § 1226(a).").

While the regulations allow for Petitioner's release to be revoked "at any time," it must be in the discretion of "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer

in charge." There is no indication that any of these officials revoked Petitioner's conditional release. Petitioner's Form I-220A provides a section titled "Cancellation of Order" in which the order of release may be canceled for failure to comply with the conditions of release or because the noncitizen was "taken into custody for removal." Within this section, a date and signature line for the "Immigration Officer Canceling Order" is provided. On Petitioner's Form I-220A, all sections that grant his conditional release are filled in and signed, but the section to cancel his release is entirely blank. This suggests that no officer, let alone a listed officer, revoked Petitioner's conditional parole. Respondents provide no argument or documentation to the contrary. The phrase "in which event" demonstrates that revocation by a listed official is a necessary precondition to Petitioner being "taken into custody and detained." Petitioner has a liberty interest in Respondents properly revoking his conditional parole prior to detaining him again. *See Sierra*, 258 F.3d at 1218.

### B.  The *Mathews* factors favor Petitioner.

Having established that Petitioner has a protected interest in Respondents following the regulations authorized by Congress, the Court will consider what process is due.

In determining what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### 1.  Private interest at stake.

The first *Mathews* factor considers the nature of the private interest at stake. Petitioner has two interests at stake. His basic interest in being free from detention is "the most elemental of

liberty interests." *Hamdi*, 542 U.S. at 529. Petitioner's interest in the procedural protections authorized by Congress is also at stake. *See Sierra* 258 F.3d at 1218 (quoting *United States ex rel. Knauff*, 338 U.S. at 544). Because of the gravity of these interests, the first factor weighs in favor of Petitioner.

### 2. Risk of erroneous deprivation and the value of additional safeguards.

Under the procedure applied to Petitioner, there exists a significant risk of the erroneous deprivation of Petitioner's conditional parole because he has been detained before the parole has been properly revoked. Petitioner's Form I-220A did not indicate that his conditional parole had been revoked, and no immigration official signed or checked any box revoking the parole. Further, Respondents provide no documentation indicating that Petitioner was arrested pursuant to a warrant or that his conditional parole had been revoked prior to arrest. The value of an additional safeguard, such as following the procedures put forth by Congress, would greatly reduce the risk of an erroneous deprivation of conditional parole. Respondents have not followed the safeguards put in place by Congress in revoking Petitioner's conditional parole, thereby creating a heightened risk of erroneous deprivation. Congress authorized these procedures for a reason, and Petitioner is entitled to their protections. *See United States v. Gonzalez-Fierro*, 949 F.3d 512, 520 (10th Cir. 2020) (finding "that when Congress enacts a procedure, aliens are entitled to it" (quoting *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084–85 (9th Cir. 2011)). Therefore, the second *Mathews* factor weighs in favor of Petitioner.

### 3. Government's interest.

When considering the Government's interest, the Supreme Court has instructed that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at

34. The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining "in the United States in violation of our law." *Demore*, 538 U.S. at 518. The Court recognizes that "[o]ver no conceivable subject is the legislative power of Congress more complete." *Flores*, 507 U.S. at 305 (citation modified). Thus, the Government's interest in enforcing its immigration policies is considerable.

Although the Government's interest in immigration enforcement weighs heavily, the Government's interest in detaining a noncitizen, such as Petitioner, without properly revoking his conditional parole does not weigh nearly as heavily as general, lawful immigration enforcement. The fiscal and administrative burdens—slight, if any—do not provide adequate justification for the agency foregoing procedural safeguards put in place by Congress to provide an organized process for revoking conditional release. The fiscal and administrative burden of following the congressionally authorized procedures to properly revoke conditional parole pales in comparison to the cost and administrative strain caused by Respondents' decision to detain noncitizens without properly revoking their conditional parole. Although the Government has a weighty interest in enforcing its immigration policies, such an interest does not tip the scale so far in its favor to justify its failure to follow congressionally authorized procedures. Thus, the third *Mathews* factor also weighs in favor of Petitioner.

Accordingly, the Court finds that, under the *Mathews* factors, Petitioner should have had his conditional parole properly revoked before being arrested and re-detained.

## IV.   <u>Immediate release is warranted.</u>

Petitioner argues that immediate release is warranted because a post-deprivation bond hearing is not an adequate remedy. Doc. 9 at 5. Respondents ask the Court to not address these claims and find that 8 U.S.C. § 1226(e) bars the Court from reviewing or assessing the work of an

immigration judge. Doc. 7 at 2. Although Petitioner has already been given a bond hearing, he was initially re-detained in violation of his ongoing conditional parole. Therefore, Petitioner must be released and not detained again until his conditional parole has been properly revoked.

In essence, habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) "The typical remedy is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243.

There is no evidence in the record demonstrating that Petitioner's conditional parole has been properly terminated. Petitioner's Form I-220A indicates that no immigration official signed off on canceling his release. Doc. 1-1. Respondents provide a single document as evidence that Petitioner received a bond hearing, but they do not provide evidence addressing the due process violations. A bond hearing, which Petitioner is entitled to regardless, cannot cure the fact that he is detained while his conditional parole is still ongoing because it has not been properly terminated. Petitioner's release is not warranted simply because he received a negative determination at his bond hearing; rather, release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated. The Court does not see how ordering another bond hearing would remedy a wrong that has been ongoing since the outset of Petitioner's re-detention. Therefore, Petitioner must be released.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that the Petition (Doc. 1) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents shall release Petitioner within **twenty-four (24) hours** of the entry of this order under the same conditions that were in place prior to his detention.

**IT IS FINALLY ORDERED** that the parties file a joint status report within **seven (7) days** of the entry of this order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE